ATTORNEY DISCIPLINARY ' , PROCEEDING PER CURIAM |, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kenneth M. Waguespack, Jr., an attorney licensed to practice law in Louisiana. FORMAL CHARGES Count I In November 2013, the ODC received notice from Capital One Bank that a check in the amount of $2,452.80 presented for payment to respondent’s client trust account (account number ending in 1527) was returned for insufficient funds. Notice of the overdraft was forwarded to respondent, along with instructions to submit documents to the ODC for review. The ODC then received a request from respondent asking for ah extension to submit the requested documentation, which was granted. When respondent failed to submit the documents, notice of the overdraft was forwarded to respondent'again-in March 2014 and hr June 2014. Respondent failed’ to produce any of the requested documentation. Count II Louisiana Primary Care Consultants (“LPCC”) provided medical services to respondent’s clients. Respondent was to pay his clients’ medical expenses from proceeds received from their claims. After learning from respondent’s clients that j atheir cases had settled, LPCC attempted to contact respondent regarding the status of payments for medical services rendered to seven clients. Respondent received the inquiry from LPCC in May 2014, evidenced by his signature on the certified mail return receipt card, but he failed to reply to the inquiry. In June 2014, LPCC filed a complaint against respondent with the ODC. Notice of the complaint was forwarded, to respondent’s primary registration address on July 10, 2014, requesting a substantive response as well as copies of documents from his trust account. The correspondence was received on July 18, 2014, but respondent failed to respond as instructed. Count, III In August- 2014, the ODC received notice from Capital One Bank that a check in the amount of $340 presented for payment to-respondent’s client trust account (account number ending in 4833) was returned for insufficient funds. In September 2014, the ODC received notices from the bank that transactions for $340,. $360, and $465 were likewise .returned due to insufficient funds. Respondent’s 2014 trust account disclosure statement does not list a client trust account ending in 4833. Upon receipt of the overdraft notices, the ODC -opeped a disciplinary investigation. Notice of the investigation was forwarded tp. respondent on September .11, 2014, requesting a .substantive response as well, as copies of documents from his trust account. Respondent failed to respond as instructed. Count IV Respondent was retained to establish an LLC for heirs of F. E. Waguespack and represent them in a property claim against the-State o.f Louisiana. The Afew Heirs, LLC was established and respondent was the registered agent for the LLC. Respondent associated Steve Irving to represent Afew Heirs in, the suit against the State. Judgment was. rendered in June 2013 and Afew Heirs was awarded [a$56,527.05. Mr. Irving received a check issued from respondent’s client trust account for his fees and expenses, but respondent failed to disburse funds due to the members of Afew Heirs. , Multiple complaints were filed against respondent arising out of this matter. In September 2014, the ODC issued a. subpoena to obtain respondent’s sworn statement and bank records for his client trust accounts. Thereafter, the OD.C received notice from the United States Postal Service indicating that respondent had changed his address. Th,e change of address had not been reported to the Louisiana State Bar Association (“LSBA”). An ODC investigator was instructed-to hand-deliver the subpoena, a bank letter, and the complaints to respondent at three known addresses. The correspondence was received on October 16, 2014. On October 23, 2014, the ODC attempted to contact respondent via certified mail to reschedule the sworn statement. Respondent was instructed to contact the ODC within ten days of receipt of the correspondence; however, he failed to do so. Notices of the complaints were delivered to respondent via certified mail on October 23, 2014. Respondent was instructed' to provide a substantive response within fifteen days of receipt of the correspondence, but he failed to respond. Count V Steve Fontenette retained respondent and Lawrence J. Centola, III to represent him in' a claim for damages sustained during his employment at Avondale Shipyards. The case settled in July 2014 for $20,000. After Mr. Fontenette signed the release, Mr. Centola’s firm issued two checks to respondent: a $3,500 check payable to respondent for his • fee and a $12,339.24 check payable to Mr. Fonten-ette. The check payable to Mr. Fontenette was endorsed with the signatures “Kenneth Waguespack” and “Steve Fonten-ette,” but Mr. Fontenette never received the check or the funds. Mr. Fontenette stated that his signature on the check is a forgery. |4In December 2014, Mr. Centola filed a complaint against' respondent with the ODC. In January 2015, Mr. Fontenette filed a complaint against respondent with the ODC. Notice of the complaints was forwarded to respondent via certified mail. The return receipt card shows delivery on February 11, 2015. When respondent failed to submit a response, the ODC forwarded another certified letter to respondent. The return receipt card shows delivery on August 12, 2015. Once again, respondent failed to respond to the complaints. Count VI Respondent assumed the representation of Stephen Bruno’s former client, Habip Ertem. After settling the matter, respondent failed to contact Mr. Bruno’s firm. Respondent also collected from the clerk of court a $525.15 refund representing advanced costs that had been paid by the Bruno firm. • In June 2015, Mr. Bruno filed a complaint against respondent with.the ODC. Notice of the complaint was forwarded to respondent. The return receipt card shows delivery on June 15, 2015. When respondent failed to submit a response, the ODC forwarded a certified letter to respondent regarding his failure to respond. The letter was returned to the ODC marked “unclaimed/undeliverable.” On August 21, 2015, the ODC received notice from the United States Postal Service informing of respondent’s new address, which had not been reported to the LSBA. Count VII In 2001, Debra LeBeau retained respondent to represent her daughter, Angel, to recover damages for injuries she sustained as a result of an accident that occurred in a Sears store. Ms. LeBeau entered into a contingency fee agreement with respondent. In October 2013, respondent sent a letter to Ms. LeBeau informing her of her of a $15,000 settlement offer extended by Sears. In the letter, respondent also | ^listed his expenses, which totaled $7,324.62, but indicated that he would forgo his fee. According to respondent, Angel was due to receive $7,324.62. Ms. LeBeau agreed to the settlement but never received the funds. Ms. LeBeau made numerous attempts to contact respondent, to no avail. In August 2015, Ms. LeBeau filed a complaint against respondent with the ODC. In November 2015, notice of the complaint was forwarded to respondent via certified mail at two addresses. Despite receiving notice of the complaint at both addresses, respondent failed to respond. DISCIPLINARY PROCEEDINGS In March 2016, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(c) (a lawyer is required to comply -with all of the requirements of the Supreme Court’s rules regarding annual registration, including timely notification of changes of address and proper disclosure of trust account information or any changes therein), 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a) (safekeeping property of clients or third persons), 1.15(d) (failure to timely remit funds to a client or third person), 1.16(d) (obligations upon termination of-the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit,, or. misrepresentation). Respondent failed to answer the formal-charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing | (¡committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration. Hearing Committee Report ’ After considering the ODC’s deemed admitted. submission, the hearing committee determined that the evidence fully supports the allegations of the formal charges. The committee also determined respondent violated the Rules of Professional Conduct as charged. The committee further determined that respondent has violated a duty owed to his clients, the public, the legal system, and-the legal profession. He acted intentionally and/or knowingly. His; actions' and omissions have caused serious, actual injury. In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. In mitigation, the committee found the absence of a prior disciplinary record. Under these circumstances, the committee recommended respondent be permanently disbarred. Neither respondent nOr the ODC filed an objection to the hearing committee’s report. | tDisciplinary Board Recommendation[1] After review, the disciplinary board determined that the factual allegations in the formal charges were deemed admitted and proven. The board also concluded that the committee correctly applied the Rules-of Professional Conduct. The board determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct was knowing, if not intentional. He converted funds belonging to multiple clients and his co-counsel. He negotiated a settlement check with the forged endorsement of his client. He failed to forward funds owed to his clients’ medical provider. He overdrew his client trust account on multiple occasions. He neglected client matters and failed to communicate with his clients. He neglected to keep his registration address current and properly report his trust account, as required. Furthermore, he refused to cooperate with the ODC. His.actions caused actual harm to clients, thii’d parties, and.co-counsel by depriying them of their funds. His failure to participate in the disciplinary proceeding caused damage in the form of needless expenditure of'the limited resources of the disciplinary agency.'After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is disbarment. The board agreed with the aggravating and mitigating factors found by the committee. In aggravation, the board also found bad faith obstruction of the | «disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency and indifference to making restitution. After considering respondent’s conduct in light of the permanent disbarment guidelines and this court’s prior jurisprudence, the board recommended respondent be permanently disbarred. The board also recommended respondent be ordered to make restitution to his former clients and third parties, as appropriate. The board further recommended he be assessed with the costs and expenses of this proceeding.- Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation. DISCUSSION Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.In re: Banks, 09-1212. (La. 10/2/09), 18 So.3d 57. In cases in .which the lawyer do.es not answer the formal- charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations.- If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that, flow from the admitted factual allegations. In re: Doman, 01-3058 (La. 1/10/03), 838 So.2d 715. laThe record in this deemed admitted matter supports a finding that respondent neglected legal matters,, failed to communicate with clients, repeatedly misused his trust account, converted client and third-party funds, and failed to cooperate with the ODC. He also failed to comply with his professional obligation to provide timely notification of changes in his address and to properly disclose his client trust account information. Based on these facts, respondent has violated the Rules . of Professional Conduct as alleged in the formal charges. Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct,, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984). Respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His misconduct was at least knowing and caused significant actual harm to several victims. The baseline sanction for this type of misconduct is disbarment. The aggravating and mitigating factors found by the disciplinary board are supported by the record. In their reports, the hearing committee and the disciplinary board concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission, to the bar. We agree. The deemed admitted facts and supporting ‘documentary evidence indicate that respondent converted approximately $70,000.[2] Respondent converted funds belonging to multiple clients, negotiated a 1 ^settlement check with the forged endorsement of a client, failed to forward funds owed to a medical providér, and converted funds belonging to co-counsel. Respondent also failed to make restitution to any client or third party. This .conduct amounts to repeated or. multiple instances of intentional conversion. of client funds with substantial harm, as required by Guideline I - of the permanent- disbarment guidelines set -.forth in Supreme Court Rule XIX, Appendix E. Respondent’s conduct demonstrates a disregard for his clients and for his duties as an attorney. In order to protect the public and maintain the high standards of the legal profession in this state, we find respondent’s license to practice law in this state must be revoked, and he must permanently forfeit any opportunity to return to the practice of law in the future. Accordingly, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to his former clients and to third-parties, as’appropriate. DECREE Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Kenneth Michael Waguespack, Jr., Louisiana Bar Roll number 28796, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make full restitution to each of his clients and the |nthird parties subject of the formal charges, or to the Louisiana State Bar Association’s Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid. . The day after oral argument before the disciplinary board, respondent submitted a motion to continue and reset hearing, alleging that he did not reside at the address where the ODC had attempted service of various pleadings. The board denied the motion but granted him thirty days to provide a current mailing address and to demonstrate good cause as to why the imposition of the deemed admitted order would be improper or unjust. On the thirtieth day, respondent sent the board a memorandum again raising issues of service. He also requested that the deemed admitted order be recalled and that he be allowed to respond to. the allegations contained in the formal charges. The board granted respondent another thirty days to answer the charges^ but he failed to file an answer or otherwise respond to the charges. The ODC then filed a motion to reinstate the deemed admitted order, which the board granted, . This sum was calculated as follows: • In Count II, LPCC provided medical services to respondent's clients totaling $12,085. • In Count IV, the members of Afew Heirs, LLC are owed $36,629.76. • In Count V, Mr. Fontenette never received his share of the settlement totaling $12,339.24. • In Count VI, Mr. Bruno’s firm is owed no less than $525,15. • In Count VII, Ms. LeBeau was due to receive $7,324.62 on her daughter's behalf.